UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:

SURGERY CENTER OF VIERA, LLC,

   *Plaintiff*,

vs.

AETNA INTERNATIONAL, INC., AETNA
LIFE INSURANCE COMPANY, GROUP
INSURANCE PLAN OF BENEFITS FOR
BERRY AVIATION, and BERRY AVIATION,
INC.,

   Defendants.
_____/

**COMPLAINT**

Plaintiff, Surgery Center of Viera, LLC ("SCV"), as medical provider, authorized representative, assignee, and / or power of attorney of patient / insured, R.L., sues Defendants, Aetna International, Inc. ("Aetna International"), Aetna Life Insurance Company ("Aetna Life"), Group Insurance Plan of Benefits for Berry Aviation (the "Plan"), and Berry Aviation, Inc. ("Berry"), as follows:

**NATURE OF THE ACTION, PARTIES,
JURISDICTION, AND VENUE**

1.   This action arises, in part (Count I), under the Employment Retirement Income Security Act of 1974, Title 29, United States Code, Sections 1000-1461 ("ERISA"), for defendants' administrative record production failures relating to the subject R.L.-related health insurance claim, implicating ERISA, Title 29, United States Code, Section 1024(b), Title 29, United States Code, Section 1132(c)(1), and Title 29, Code of Federal Regulations, Section

1

2575.502c-1 to be precise. This action also arises, in part (Counts II – V), under Florida state law for defendants' underpayment of the monies owed to the medical provider (SCV) for medical services rendered by SCV to the Plan participant / patient / insured, R.L., on January 22, 2019.[1]

2.      At all material times, SCV was a medical provider and a Florida limited liability company with its citizenship (*i.e.*, principal place of business / "nerve center") in Viera, Florida, Brevard County. SCV is *sui juris* in all respects. SCV's members are as follows: (a) Dr. Ara Deukmedjian, domiciled in Brevard County, Florida, (b) Sun Deukmedjian, domiciled in Brevard County, Florida, and (c) Dr. Bharat Patel, domiciled in Brevard County, Florida. At all material times, SCV was the authorized representative of R.L. with an assignment of benefits and power of attorney as well.

3.      At all material times, Aetna International was an insurance company with its principal place of business / headquarters in the State of Connecticut and engaged in the business of selling insurance, administering insurance, and / or deciding and paying insurance claims throughout the State of Florida.

4.      At all material times, Aetna Life was an insurance company with its principal place of business / headquarters in the State of Connecticut and engaged in the business of selling insurance, underwriting insurance, administering insurance, and / or deciding and paying insurance claims throughout the State of Florida.

---

[1] One of the problems created by defendants' failure to produce the entire administrative record (discussed in greater detail below) is SCV's inability to confirm with 100% certainty that the underpayment aspect of this dispute emanates solely from a rate dispute; but, by all appearances from the materials SCV presently possesses, this is a pure "rate of payment" dispute. Federal authority makes clear that a "rate of payment" dispute is subject to Florida state law rather than ERISA federal law. Because defendants' legally, statutorily, and contractually repugnant refusal to timely produce the administrative record has stymied SCV's ability to make heads-or-tails of the reasons why defendants underpaid the subject claim, SCV reserves the right to amend this complaint if needed to expound on Counts II – V relating to the owed insurance benefits once defendants are made to produce all germane documentation / information (often called an administrative record) upon which the claim payment decision was based (Count I). Given the ongoing harm being created by defendants' administrative record production failures, legal action could not wait any longer.

5. At all material times, Berry, was incorporated in the State of Texas with its principal place of business / headquarters in San Marcos, Texas, and engaged (in pertinent part here) in the administration and / or sponsorship of the Plan.[2]

6. This Court possesses original jurisdiction pursuant to Title 29, United States Code, Section 1132(c)(1), and Title 28, United States Code, Section 1331 with respect to Count I. Pursuant to Title 28, United States Code, Section 1367, the Court has pendent jurisdiction over Counts II-V. Moreover, the Court possesses original jurisdiction pursuant to Title 28, United States Code, Section 1332, as the parties are diverse and the amount in controversy exceeds $75,000.00.

7. Venue is proper in the Middle District Court of Florida pursuant to Title 28, United States Code, Section 1391(b), since, for examples, (a) a substantial part of the events or omissions giving rise to the subject action occurred in this jurisdiction, namely the subject medical procedures unfolded in this jurisdiction and defendants' underpayment of the subject insurance claim both at the initial claim and subsequent pre-suit appeal stages and refusal to supply germane documentation / information required by federal law (and also Florida Statute, for that matter, and also likely by the insurance policy) unfolded in this jurisdiction, and (b) the Orlando Division of this Court has personal jurisdiction (due to defendants' minimum contacts in this forum).

8. All conditions precedent to the institution of this action (*e.g.*, administrative pre-suit appeals) have occurred, been performed, been waived, or were futile.

---

[2] Upon information and belief, the Plan is self-funded. If the Plan was / is fully-insured (as opposed to self-funded), the Berry defendants would not need to be part of the benefits amount dispute (Counts II – V), *i.e.*, the Berry defendants could be dismissed out of this action once the administrative record is produced and the administrative record production penalty is satisfied.

## COMMON ALLEGATIONS

9. At all material times, R.L. was covered by the Plan as evidenced by defendants' partial payment of the subject claim. Upon information and belief, the Plan's Group / Control number was / is 499880-11-001 and the Patient's Member I.D. number was / is W238298698. The assigned claim reference / ID number was / is PSFB4ZY2J02. A copy of the Plan documents cannot be attached because defendants have failed / refused to produce such documents to SCV.[3]

10. At all material times leading up to the subject medical services received from SCV, R.L. suffered from two disk herniations, spondylosis, stenosis, radiculopathy, early myelopathy, chronic neck pain, and cervicobrachial syndrome. R.L. tried alternative, conservative management treatments, which failed and surgical treatment was deemed medically necessary. So, on January 22, 2019, SCV operated on R.L. to remedy R.L.'s medical conditions.

11. SCV's billed charges for the subject medical services rendered to R.L. totaled $152,458.00, and a claim package was submitted to Aetna relating to same.

12. By way of a document entitled Explanation of Benefits ("EOB") dated February 20, 2019, Aetna underpaid the subject claim, tendering $5,229.04.

13. As for the purported bases for Aetna's underpayment amount, the EOB nakedly sets forth the following in a section entitled "Remarks":

> 1 – Member's plan allows up to 140% of the Medicare Allowable Rate for charges covered by their plan.
> 2 – Payment for this service is included in the case rate paid for the claim.
> 3 – The claim for this service is denied under our reimbursement policies, which, consistent with CMS payment rules, provide that because this service is a packaged service, no separate payment is made in absence of claim coding consistent with CMS billing guidelines that allows for separate payment.

14. On or about January 15, 2019, and prior to the procedure, Aetna advised SCV that

---

[3] Somewhere along the line, SCV came to possess a coverage outline, which is attached as **Exhibit A**. Once defendants are made to produce the actual insuring agreement, SCV reserves the right to amend this complaint if needed.

the subject medical services / surgery were approved as medically necessary and would be covered "at an in-network benefit level."

15.     On February 28, 2019, SCV filed an appeal with Aetna of the claim payment decision.

16.     On April 30, 2019, Aetna sent a "final level of appeal response" to SCV stating its previous determination was partially upheld.

17.     Again, this is not a coverage dispute (*i.e.*, "right of payment" dispute) because Aetna properly conceded coverage *via* the $5,229.04 partial claim payment and by not listing any medical judgment related basis for partial payment amongst the claim decision EOB codes. Therefore, this is a damages dispute (*i.e.*, "rate of payment" dispute) pertaining solely to the underpayment that was predicated on Aetna's aberrant claim decision-making.

18.     On or about June 17, 2019, undersigned counsel sent correspondence to defendants advising that he represented Plaintiff, SCV. The letter contained a request for the entire administrative record / claim file pursuant to the law (the United States Code and, to some extent, Florida Statute) and / or the SPD. The pertinent content of this letter was as follows (emphasis in original):

> Regarding our assessment of the subject insurance claim(s) denial, underpayment, or delayed non-decision, we ask the claim administrator and / or the plan administrator to please promptly provide us with a copy of the entire administrative record. The administrative record should consist, at minimum, of the following: **(1)** Complete, certified copies of all plan documents (master policy, summary plan description, benefit booklet, certificate of coverage, or the like) in effect at the times of the subject medical services and / or at the times of any claims made relating to the subject medical services; **(2)** Copies of all correspondence and / or documents exchanged between the insured / patient (or any insured / patient representatives) and the claim administrator and / or plan administrator regarding the subject medical services and / or any claims made relating to the subject medical services; **(3)** Copies of all correspondence and / or documents exchanged between Surgery Center of Viera and the claim administrator and / or plan administrator regarding the insured / patient, the subject policy / plan, the subject medical

services, and / or any claims made relating to the subject medical services; **(4)** Copies of all correspondence and / or documents exchanged between any other party and the claim administrator and / or plan administrator (less attorney-client privileged data, of course) regarding the insured / patient, subject medical services, and / or any claims made relating to the subject medical services; **(5)** Copies of all of the insured's / patient's Surgery Center of Viera-related medical records in the claim administrator's and / or plan administrator's possession; **(6)** Identification of all policy / plan language upon which the claim(s) decision-making was based; **(7)** Contact information for any medical professionals enlisted by the claim administrator and / or plan administrator regarding the subject medical services and / or any claims made relating to the subject medical services; **(8)** Transcripts and audio recordings of any recorded statements or phone calls between the insured / patient (or any representatives of the insured / patient) and the claim administrator and / or plan administrator regarding the insured / patient, subject medical services, and / or any claims made relating to the subject medical services; **(9)** Transcripts and audio recordings of any recorded statements or phone calls between Surgery Center of Viera and the claim administrator and / or plan administrator regarding the insured / patient, subject medical services, and / or any claims made relating to the subject medical services; **(10)** Transcripts and audio recordings of any recorded statements or phone calls between any other party and the claim administrator and / or plan administrator (less any attorney-client privileged data, of course) regarding the insured / patient, subject medical services, and / or any claims made relating to the subject medical services; **(11)** All EOBs relating to any claims that were made relating to the subject medical services; **(12)** All Surgery Center of Viera billing and / or claim(s) submission paperwork received by the claim administrator and / or plan administrator relating to the insured / patient; **(13)** All evidence of any payment(s) made by the claim administrator and / or plan administrator relating to any claims that were made relating to the subject medical services; **(14)** All guidelines, manuals, written protocol, medical treatises, medical literature, and / or the like upon which the claim administrator and / or plan administrator partially or wholly based its claim(s) decisions; **(15)** All billing paperwork, rate / fee schedules, data or formulas, third-party re-pricing vendor (*e.g.*, PMCS, TRPN, MultiPlan, Viant, Optum, Zelis) paperwork / contracts possessed by the claim administrator and / or plan administrator relating to "usual, customary, reasonable" (UCR) medical provider charges (sometimes referred to as the "eligible expense" assessment), and / or any other data upon which the claim administrator and / or plan administrator has based its decisions as to how much indemnity to afford on the subject claim(s); **(16)** Copies of any documents relating to any reinsurance relating to the subject policy / plan; **(17)** Copies of any documents relating to any arrangement / agreement between the plan administrator and the claim administrator relating to end of year cost savings between the two (*i.e.*, sharing / splitting of monies saved in relation to the policy / plan due to claim underpayments / denials), which such arrangements / agreements are often called "Level Funded Plans;" **(18)** Copies of any administrative services agreements (sometimes called Third Party Administrator, "TPA," Agreements, for example) between the claim administrator and plan administrator; and **(19)** Copies of any other documents that

6

> the claim administrator and / or plan administrator partially or wholly relied on in deciding any claim(s) relating to the subject medical services.
>
> Equipped with this legally required documentation / information, we will be in a position to assess and carry out the next step (*e.g.*, pre-suit appeal(s), external reviews, complaints / grievances with state offices of insurance regulation, litigation, and / or *et cetera*). If the claim administrator and / or plan administrator somehow contend that our administrative record production request needs to be directed, in whole or in part, to some other person or entity, we expect the administrators to promptly forward our administrative record production request to that person or entity and carbon copy us on such correspondence.

19. On July 25, 2019, Aetna responded to the request providing only a summary of claims made for the insured / patient, R.L., and not the entire administrative record and subject Plan documents.

20. SCV exhausted the pre-suit appeal process to the best of its ability, hindered by defendants' wrongful refusal to provide required / requested administrative records (and / or like records available per contract or Florida Statute requiring explanation / substantiation to the recipient of an adverse benefits determination, here SCV), in an effort to accomplish defendants' doing the right thing (*i.e.*, fully compensating SCV) sans litigation, to no avail. Hence, this lawsuit as SCV's regrettable last resort.

21. SCV has suffered significant financial harm no matter how one slices this situation. The financial harm by way of owed monies relating to the subject R.L. procedure is in excess of $75,000.00, not including interest of attorneys' fees, costs, or interest.

**COUNT I – PETITION TO COMPEL PRODUCTION OF THE "ADMINISTRATIVE RECORD" AND FOR RECOVERY OF ADMINISTRATIVE RECORD PRODUCTION FAILURE PENALTY PURSUANT TO ERISA, 29 U.S.C. § 1024(B), 29 U.S.C. § 1132(c)(1) AND 29 C.F.R. § 2575.502c-1**

SCV re-alleges Paragraphs 1 through 21 as if fully set forth herein, and further alleges as follows.

22. This is a claim for production of the administrative record and for award of

7

administrative record production failure penalty pursuant to Title 29, United States Code, Section 1132(c)(1), Title 29, United States Code, Section 1024(b), and Title 29, Code of Federal Regulations, Section 2575.502c-1.

23. By June 17, 2019, letter (referenced in the above common allegations), SCV and its legal counsel asked defendants to provide the administrative record / germane documentation in relation to the R.L. claim, mainly (but not entirely) to learn defendants' reasons for claim underpayment so that SCV could contest same in an educated fashion.

24. Defendants shirked their legally (whether that be United States Code or Florida Statutes) and likely also contractually prescribed administrative record production responsibilities.

25. Per the above-cited United States Code and Code of Federal Regulations, *see* ¶ 1, *supra*, the $110.00 / day administrative penalty started accruing July 18, 2019.[4] From July 18, 2019, through the date of this complaint (January 22, 2019), 188 days have passed without defendants' satisfaction of the administrative record / germane record requests made in the aforementioned letter regarding the R.L. claim. So, as of the filing date of this complaint, the $110.00 / day administrative penalty totals $20,680.00. Of course, the $110.00 / day penalty will continue to accrue until such time that defendants oblige the germane documentation / information requests (*e.g.,* a certified copy of the policy / plan document, payment rate schedules / formulas, *et cetera*) set forth in the June 17, 2019 letter noted above.

26. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of defendants' wrongful withholding of the administrative record / germane documentation.

27. As a further result of defendants' refusal to produce the administrative record /

---

[4] This represents the date that falls thirty-one days after the June 17, 2019, request for the administrative record.

germane documentation, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover reasonable attorneys' fees and costs pursuant to Title 29, United States Code, Section 1132(g)(1) or Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, respectfully requests (a) Court order compelling defendants to produce the outstanding administrative record posthaste and allowing SCV thirty days following production of the administrative record to amend this complaint if necessary, (b) an award to SCV of the administrative record production failure penalty incurred by defendants pursuant to Title 29, United States Code, Section 1132(c)(1), Title 29, United States Code, Section 1024(b), and Title 29, Code of Federal Regulations, Section 2575.502c-1, (c) an award to SCV of attorneys' fees (pursuant to Title 29, United States Code, Section 1132(g)(1)) and costs incurred bringing this action, and (d) the Court's affording of any other relief the Court deems equitable, just, and / or proper.

## COUNT II – BREACH OF CONTRACT

SCV re-alleges Paragraphs 1 through 21 as if fully set forth herein, and further alleges as follows.

28.  At all material times to this action and in exchange for a valuable premium, defendants provided health insurance to R.L. under the Plan, which is a binding and enforceable insurance contract under the laws of the State of Florida.

29.  The subject medical services were covered under the Plan, as evidenced by defendants' partial payment of insurance benefits relating to same. Defendants erred in deciding to not fully compensate SCV by only tendering a $5,229.04 underpayment in relation to $152,458.00 in billed charges.

30.     Defendants' $5,229.04 underpayment does not constitute a usual, customary, reasonable ("UCR") re-priced / allowed amount no matter how one views the situation. First, for example, the supposed Medicare-related allowed amount alluded to in Exhibit A and in the aforementioned EOB "remarks" does not apply here because there is not a corresponding Medicare rate for most (if not all) of the codes set forth on the subject HCFA that was enclosed with SCV's aforementioned claim submission package. Second, as another example, unbiased third-party re-pricing vendors who Aetna (at least) contracts with (*e.g.*, MultiPlan, Preferred Medical Claim Solutions, "PMCS," Three Rivers Provider Network, "TRPN") have established SCV's UCR-based re-priced / allowed amount at 60-80% of billed charges (at least in relation to non-implant HCFA line-items). Third, as another example, unbiased public databases (*e.g.*, AHCA) assessing the rates of providers of like kind within like Florida geographies make clear that defendants' unsubstantiated $5,229.04 lowball payment does not find support amidst UCR rates relating to providers of like kind within like Florida geographies.[5]

31.     Likely by the terms of the Plan and pursuant to Florida law regardless,[6] defendants, among other things, had a duty to properly investigate the subject medical services, adjust / investigate the subject SCV claim relating to such services, and fully compensate SCV in relation to same. Defendants failed SCV in these regards (most notably with respect to their failure to pay the monies due and owing under the Plan), which breached the Plan and / or violated Florida law.

32.     Defendants failed SCV in these regards (most notably with respect to their failure to pay all monies due and owing under the Plan), which doubtless breached the Plan and / or

---

[5]     *See, e.g.,* http://www.floridahealthfinder.gov/LandingPages/HospitalASC.aspx and http://www.floridahealthfinder.gov/CompareCare/SelectChoice.aspx.

[6] "Likely" because, again, defendants have wrongly withheld the Plan document (among other administrative records).

violated Florida law.[7]

33.    As a direct, foreseeable, and proximate result of defendants' breach of their obligations under the Plan, SCV has suffered and continues to suffer damages.

34.    SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of defendants' underpayment of the monies owed to it in relation to the subject R.L. medical services.

35.    As a further result of defendants' refusal to fully compensate SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendants, Aetna International, Inc., Aetna Life Insurance Company, Group Insurance Plan of Benefits for Berry Aviation, and Berry Aviation, Inc., for liability and for damages including, but not limited to, past-due contractual monies owed in relation to the subject medical services, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

### COUNT III – UNJUST ENRICHMENT

SCV re-alleges Paragraphs 1 through 21 as if fully set forth herein, and further alleges as follows.

36.    SCV conferred a direct benefit on defendants by providing defendants' insured /

---

[7] "Doubtless" because, again, Defendants have wrongly withheld the Plan document (among other administrative records).

member (R.L.) with medical services to which the insured was entitled under the insurance policy as evidenced by defendants' partial payment. Examples of "conferral of benefit" would include the following, for examples, which are posed as questions: (a) What about defendants receiving the benefit when its policyholder received care and treatment offering defendants' insurance policy as their primary method of payment? (b) What about the good health of R.L. conferred on defendants? Was it not of benefit to defendants that SCV minimized (if not entirely eliminated) R.L.'s future medical expense (and insurance claims to defendants) relating to the subject conditions such as prolonged alternative treatments or a return for more (and perhaps more complex) surgery due to complications arising out of some other inferior treatment regimen? Defendants voluntarily accepted and received the benefit conferred by SCV, with the knowledge that SCV expected to be paid the reasonable value of its services; *i.e.*, SCV's usual, customary, reasonable charges as prescribed by reasonable, negotiated re-pricing vendors (*e.g.*, PMCS, TRPN, MultiPlan) or, for that matter, as prescribed in the Plan or even the Florida's publicly available AHCA database assessing rates of various medical providers of like kind within like geography.

37.  Defendants voluntarily accepted and received the benefit conferred by SCV, with the knowledge (through course of past dealings with SCV or otherwise) that SCV expected to be paid the reasonable value of its services; *i.e.*, SCV's UCR charges as prescribed by reasonable, unbiased re-pricing vendors (*e.g.*, PMCS, TRPN, MultiPlan) or, for that matter, as prescribed in the Florida's publicly available AHCA database assessing rates of various medical providers of like kind within like geography.

38.  Defendants have not paid the value of the benefit conferred by SCV in that defendants have significantly underpaid SCV's claim for monies owed in relation to the medical services provided to R.L.

39. Defendants' underpayment results in a windfall for Defendants in that (a) defendants collect premiums in return for agreeing to properly compensate providers, like SCV, who render covered medical services, and / or (b) defendants enjoy an unearned profit in relation to the insurance benefits themselves, in relation to interest that has accrued on the wrongly withheld benefits, in relation to investment returns enjoyed through the monies wrongly withheld from SCV, in relation to level-funded plan profits enjoyed through the wrongly withheld monies, and / or *et cetera*.

40. It is unjust under the circumstances for defendants to underpay SCV's claim.

41. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of defendants' underpayment of the monies owed to it in relation to the subject medical services.

42. As a further result of defendants' refusal to fully compensate SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendants, Aetna International, Inc., Aetna Life Insurance Company, Group Insurance Plan of Benefits for Berry Aviation, and Berry Aviation, Inc., for liability and for damages including, but not limited to, past-due monies owed in relation to the subject medical services, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## COUNT IV – *QUANTUM MERUIT*

SCV re-alleges Paragraphs 1 through 21 as if fully set forth herein, and further alleges as follows.

43. SCV conferred a direct benefit upon defendants by providing defendants' insured / member (R.L.) with medical services to which the insured was entitled under the insurance policy as evidenced by defendants' partial payment. Examples of "conferral of benefit" (in the form of questions) are discussed in Paragraph 36, *supra*, and incorporated into this count by reference.

44. SCV billed defendants its UCR charges for the services as prescribed by reasonable re-pricing vendors (*e.g.*, PMCS, TRPN, MultiPlan) or, for that matter, as prescribed in the Plan or Florida's publicly available AHCA database assessing rates of various medical providers of like kind within like geography. The billed charges represent the fair market value of the services rendered.

45. Defendants received the bill from SCV but underpaid SCV for the services.

46. A contract implied-in-fact was doubtless established through defendants' knowledge that services were being rendered and both sides intended for compensation to be paid, with the parties possessing the compensation intention through the course of their past dealings or otherwise.

47. In order for the implied-in-fact contract to have been formed, defendants did not have to be the recipient of the services or request the services.

48. SCV is entitled to reasonable compensation for the services (*i.e.*, *quantum meruit*), which is by no means accomplished by defendants' unsubstantiated lowball payment but is reflected in reasonable sources such as third-party re-pricing vendors' (*e.g.*, PMCS, TRPN, MultiPlan) or Florida's publicly available AHCA databases of assessments of SCV's rates. And

determination of the proper amount of compensation is a question of fact reserved for a jury.

49. The circumstances are such that it would be inequitable for defendants to retain the benefit of the subject medical services without paying SCV the proper value for same.

50. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of defendants' underpayment of the monies owed to it in relation to the subject medical services.

51. As a further result of defendants' refusal to fully compensate SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendants, Aetna International, Inc., Aetna Life Insurance Company, Group Insurance Plan of Benefits for Berry Aviation, and Berry Aviation, Inc., for liability and for damages including, but not limited to, past-due monies owed in relation to the subject medical services, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## COUNT V – VIOLATION OF SECTION 627.64194 OF THE FLORIDA STATUTES

SCV re-alleges Paragraphs 1 through 21 as if fully set forth herein, and further alleges as follows:

52. Defendants are insurers governed by Chapter 627 of the Florida Statutes.

53. SCV provided nonemergency services to R.L. The services are covered services pursuant to Section 627.64194 of the Florida Statutes.

54. SCV billed defendants, specifying the nature of the services in its claim submission package and usual, customary, and reasonable charges for such services. The billed charges represent the fair market value of the services rendered.

55. Aetna rendered a claim decision (which the Berry defendants ratified) that grossly underpaid SCV for the services rendered to R.L.

56. Aetna (and the Berry defendants by extension, as the presumed Plan sponsors) is required, pursuant to Sections 626.64194(4) and 626.64194(5) of the Florida Statutes (both of which *via* Section 626.64194(4) refer to Section 641.513(5) in the following regard), to compensate SCV for the subject medical services in an amount equal to the lesser of: (a) SCV's charges, (b) the usual and customary provider charges for similar services in the community where SCV provides services, or (c) the charge mutually agreed to by SCV and Aetna within sixty days of SCV's claim submission.

57. Defendants' claim underpayment decision fails to satisfy Sections 626.64194(4) and 626.64194(5).

58. Defendants have failed to comply with Section 627.64194 of the Florida Statutes by underpaying SCV for the subject medical services.

59. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of defendants' underpayment of the monies owed to it in relation to the subject medical services.

60. As a further result of defendants' refusal to fully compensate SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendants, Aetna International, Inc., Aetna Life Insurance Company, Group Insurance Plan of Benefits for Berry Aviation, and Berry Aviation, Inc., for liability and for damages including, but not limited to, past-due monies owed in relation to the subject medical services, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## JURY DEMAND

61.     Plaintiff, Surgery Center of Viera, LLC, demands a trial by jury on all issues so triable as a matter of right.

Dated this 22nd day of January, 2020.

                                Respectfully Submitted,

**CALLAGY LAW, P.C.**
1900 N.W. Corporate Blvd., Ste 310W
Boca Raton, Florida  33431
(561) 405-7966 (o); (201) 549-8753 (f)

/s/ Jeffrey L. Greyber
**Jeffrey L. Greyber, Esq.**
Fla. Bar No. 41103
jgreyber@callagylaw.com
hcasebolt@callagylaw.com
*Attorneys for Plaintiff*